# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LARRY KLAYMAN, individually,
W. 7050 Palmetto Park Road
Suite 15-287
Boca Raton, FL 33433

                        Plaintiff,

                 v.

JUDICIAL WATCH, INC.,
425 Third Street SW
Suite 800
Washington, D.C. 20024

(A District of Columbia Corporation)

and

THOMAS J. FITTON, individually and in his
capacity as a Judicial Watch director,
c/o 425 Third Street SW
Suite 800
Washington, D.C. 20024

(Citizen of District of Columbia)

and

PAUL J. ORFANEDES, individually and in his
capacity as a Judicial Watch director,
c/o 425 Third Street SW
Suite 800
Washington, D.C. 20024

(Citizen of Virginia)

and

CHRISTOPHER FARRELL, individually and in
his capacity as a Judicial Watch director,
c/o 425 Third Street SW
Suite 800
Washington, D.C. 20024

 (Citizen of Virginia)

and

COLLEEN KOLLAR-KOTELLY,

**Civil Action No. 1:19-cv-2604**

1

c/o 333 Constitution Avenue, N.W.
Washington, D.C. 20001

Individually And In Her Official Capacity,

Defendants.

## AMENDED COMPLAINT TO SET ASIDE JUDGMENT FOR DAMAGES AND FOR OTHER RELIEF

Plaintiff, LARRY KLAYMAN, ("Plaintiff") hereby files this action against JUDICIAL WATCH, INC. ("Defendant Judicial Watch"), THOMAS J. FITTON ("Defendant Fitton"), PAUL J. ORFANEDES ("Defendant Orfanedes"), CHRISTOPHER FARRELL ("Defendant Farrell") and the Honorable COLLEEN KOLLAR-KOTELLY ("Defendant Kotelly") pursuant to Federal Rule of Civil Procedure ("FRCP") 60(d)(1) for (1) fraud, misrepresentation, and/or misconduct by an opposing party (FRCP 60(b)(3)), (2) a reason that justifies relief (FRCP 60(b)(6)), (3) fraud on the court (FRCP 60(d)(3)), (4) perjury, and (5) suborning perjury, as well as other causes of action as pled herein.

FRCP 60, Relief from a Judgment or Order, provides in pertinent part:

(b) GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
. . .
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
. . .
(6) any other reason that justifies relief.
. . .
(d) OTHER POWERS TO GRANT RELIEF. This rule does not limit a court's power to:
(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
. . .
(3) set aside a judgment for fraud on the court.

Fed. R. Civ. P. 60.

1. **Plaintiff files this Complaint pursuant to FRCP 60(d)(1); "an independent action to relieve a party from a judgment, order or proceeding[.]**." Fed. R. Civ. P. 60(d)(1) (emphasis added).

2. FRCP 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances." *Gonzales v. Crosby*, 545 U.S. 524, 528 (2005).

3. FRCP 60(d)(1) is designed "to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998).

4. Plaintiff seeks relief from judgment in a case styled *Klayman v. Judicial Watch, Inc.*, 06-cv-00670 (D.D.C.) ("District Court" or "the District Court case") entered on March 18, 2019 on the bases of fraud, misrepresentation, misconduct, other reasons that justify relief, fraud on the court, perjury, subornation of perjury and related illegalities.

5. The District Court's judgment of March 18, 2019 ought not, in equity and good conscience, be enforced and must be vacated; Plaintiff maintains good defenses to the alleged causes of action on which the judgment was founded; fraud and mistake prevented Plaintiff from obtaining the benefit of his defenses; there was an absence of fault on the part of Plaintiff; and there is no other adequate remedy at law.

6. Plaintiff made reasonable and substantial efforts in the original action in the District Court to ascertain the truth of the matter and rectify the grave miscarriage of justice, but the District Court judge presiding over the case refused to rectify the injustice as well as to disqualify herself from these proceedings based on repeated showings of extrajudicial bias and prejudice and at a minimum, the appearance of a lack of impartiality as would require disqualification under 28 U.S.C. § 144 and/or 28 U.S.C. § 455.

7.      Accordingly, this Amended Complaint should not be and cannot be assigned as related to this District Court judge, Defendant Kotelly, who presided over the underlying judgment. She has a conflict of interest since her actions and inactions resulted in the necessity of bringing this Complaint, and through these actions and inactions she has ratified, adopted and turned a blind eye toward and acquiesced in and furthered the fraud and other misconduct which give rise to  the serious allegations set forth herein, as a result of her extrajudicial bias and prejudice towards Plaintiff.

8.      Defendant Kotelly is a necessary party under FRCP  19 (a) (1) (A) (B) and other applicable provisions of FRCP 19 and thus is named as a defendant herein only as to the equitable relief (and not monetary relief) requested with regard to setting aside, vacating and nullifying the subject jury verdict and judgment, as she sanctioned and willfully furthered the fraud and other misconduct of the other Defendants named herein.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as this case arises, *inter alia*, under federal law, FRCP 60. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) as the parties are diverse and the amount in controversy exceeds $75,000.

10.     This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367(a) as it enjoys other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) as Defendants Judicial Watch and Fitton reside in this district and the other directors of Judicial Watch, Defendants Orfanedes and Farrell do business in this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2)

as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

12.     Plaintiff is an individual and citizen of Florida. Plaintiff is a private lawyer and conservative public interest advocate, litigator, author, columnist and radio talk show host.

13.     Defendant Judicial Watch is a 501(c)(3) organization formed under the laws of the District of Columbia with its headquarters in the District of Columbia. Plaintiff founded Defendant Judicial Watch on July 29, 1994 as a public interest government watchdog group to investigate and prosecute corruption and abuse in government and the legal system and to educate the public.

14.     Defendant Fitton is an individual and citizen of the District of Columbia. He is currently and was at all material times a board member and President of Defendant Judicial Watch. Plaintiff hired Defendant Fitton in 1998 and appointed him president thereafter. When Plaintiff hired him as an assistant, Defendant Fitton lied to Plaintiff, representing that he was a graduate of George Washington University. With regard to the claims set forth herein, Defendant Fitton acted individually and as a member of the board of directors, jointly and in concert with the other Defendants.

15.     Defendant Orfanedes is an individual and citizen of Virginia. He is currently and was at all material times a board member, the Treasurer and the Director of Litigation of Defendant Judicial Watch. Plaintiff hired Defendant Orfanedes as an associate in 1992 before he founded Judicial Watch. Defendant Orfanedes acted individually and as a member of the board of directors, jointly and in concert with the other Defendants.

16.     Defendant Farrell is an individual and citizen of Virginia. He is currently and was at all material times a board member and the Director of Research and Investigation of Defendant Judicial Watch. Plaintiff hired Defendant Farrell during his tenure at Judicial Watch. Previously, Defendant Farrell was unemployed. Defendant Farrell acted individually and as a member of the board of directors, jointly and in concert with the other Defendants.

17.     Defendant Kotelly is and individual and on information and belief a citizen of the District of Columbia and is at all material times the judge who presided over the underlying case which resulted in a jury verdict and judgment based on fraud and the other misconduct which form the bases of the allegations set forth in this Amended Complaint.

## STANDING

18.     Plaintiff has standing to bring this action because he has been directly affected and victimized by the unlawful conduct complained herein. His injuries are proximately related to the conduct of Defendants.

19.     Plaintiff also has standing to bring this action pursuant to FRCP 60(d)(1).

## BACKGROUND FACTS FOR THE DISTRICT COURT CASE

20.     On July 29, 1994, Plaintiff founded the organization Judicial Watch, Inc. and remained the chairman, member of the board, treasurer and general counsel of it up until and including September 19, 2003.

21.     Plaintiff conceived of, incorporated and founded Judicial Watch to restore and promote ethics and integrity in government and in the legal profession – and thus investigate and prosecute corruption and abuse in government and the legal system – and was the first to conceive of and use the trademark "Judicial Watch" and "No One is Above the Law" in commerce.

22.     Plaintiff conceived of Judicial Watch to serve as a private Justice Department for the people, free from the influences of politics he had seen as a trial attorney at the U.S. Department of Justice.

23.     During the approximately ten (10) years that Plaintiff founded and led Judicial Watch, the organization grew from one office with a volunteer staff to, by the year 2000, a $28,000,000 plus, per annum, foundation with headquarters in Washington, D.C. and regional offices in Los Angeles, California; Chicago, Illinois; Dallas, Texas; Miami, Florida; and Norfolk, Virginia. By the year 2003, Judicial Watch had over fifty (50) employees with plans to expand not only domestically, but also internationally. It had nationally syndicated radio and television shows called "The Judicial Watch Report," expanding the group's prestige and influence.

24.     In 2003, a seat in the U.S. Senate opened in Plaintiff's home state of Florida. Plaintiff decided that he could be even more effective in his fight against corruption by being elected to the U.S. Senate.

25.     Though Judicial Watch had become a substantial, leading and premier conservative public interest organization, Plaintiff believed that the most effective way to effectuate a non-partisan "clean-up" of government was to transition Judicial Watch to a suitable successor while he was elected to the U.S. Senate. Plaintiff intended to take his "Judicial Watch" style of advocacy inside the U.S. Senate, while Judicial Watch continued its work as an independent non-profit organization.

26.     Upon negotiations concerning Plaintiff's departure from Judicial Watch, Plaintiff discussed with Defendant Fitton the need for a suitable chairman and general counsel with trial experience, as Judicial Watch had none with Klayman's departure, to take Plaintiff's place.

27.     During these negotiations, Plaintiff discovered that Defendant Fitton had not obtained his undergraduate degree and had lied to Plaintiff when he was hired by Judicial Watch, initially as a contractor and than as an assistant to Plaintiff. Defendant Fitton also misrepresented that he would find a suitable successor for Plaintiff as chairman and general counsel. Instead of taking the steps that he promised, Defendant Fitton acted to entrench himself in control of Judicial Watch and run it as his own operation for his own gain. In effect, he turned Defendant Judicial Watch into a cult of personality, fearful of competition from lawyer Plaintiff, several years his senior.

28.     During these negotiations, Defendant Fitton acted tortiously and in secret to remove persons loyal to Plaintiff from Judicial Watch in order to take over and completely change the nature of Judicial Watch after his departure.

29.     On September 19, 2003, Plaintiff, Defendant Judicial Watch and Defendant Fitton, along with another director of Judicial Watch, Defendant Orfanedes, agreed to and signed a Confidential Severance Agreement ("Severance Agreement").

30.     The Severance Agreement outlined the terms of Plaintiff's voluntary departure from Judicial Watch.

31.     Specifically, the Severance Agreement provided: "**Klayman's employment shall terminate effective September 19, 2003** (the "Separation Date"), **and it shall be treated for all purposes as a voluntary resignation**." *Klayman v. Judicial Watch*, *Inc.*, 06-cv-00670 (D.D.C.). [D.C. Dkt. # 86, Ex. A] (emphasis added).

32.     Specifically, the Severance Agreement, which was signed, executed and agreed to by Plaintiff, Defendant Fitton and Defendant Orfanedes on behalf of Judicial Watch provided:

"On or before September 27, 2003, Judicial Watch shall issue a press release announcing that Klayman is leaving Judicial Watch. That press release shall state:"

> **Judicial Watch announced today that Larry Klayman has stepped down as Chairman and General Counsel of Judicial Watch, to pursue other endeavors. Tom Fitton, who is President of Judicial Watch, said: "Larry conceived, founded and helped build Judicial Watch to the organization it is today, and we will miss his day to day involvement. Judicial Watch now has a very strong presence and has become the leading non-partisan, public interest watchdog seeking to promote and ensure ethics in government, and Larry leaves us well positioned to continue our important work.**

*Id*. at ¶ 18 (emphasis added).

33.     Specifically, the Severance Agreement provided: "**Judicial Watch agrees that Klayman shall be permitted to use, publish and otherwise disseminate to third parties the following additional statement of Judicial Watch:** 'Larry was the creator and founder of **Judicial Watch, and helped build it to be a stable, successful and widely respected organization. We thank him for his service.**' Klayman agrees that Judicial Watch shall be permitted to use, publish and otherwise disseminate to third parties the following statement of Klayman: 'I have left Judicial Watch in good hands and will continue to support it, and I hope you will too.' The Parties agree that they will limit any statements to third parties regarding Klayman's leaving Judicial Watch to be consistent with the Press Release and statements contained in his [sic] paragraph, except as may be required by law." *Id*. (emphasis added).

34.     Specifically, the Severance Agreement provided: "[t]his Agreement constitutes the entire agreement and understanding between and among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous written or oral agreements and understandings between the Parties with respect to the subject matter of this Agreement . . . [n]either the negotiations preceding this Agreement or any draft, term sheet, outline, note, or statement, assertion, representation, or understanding prior to or contemporaneous with the

execution of this Agreement shall be used to interpret, change or restrict the express terms and provisions of this Agreement. *Id*. at ¶ 26.

35.     From the time Plaintiff stepped down from his posts at Judicial Watch, Defendant Fitton, directly and through other directors and agents of Judicial Watch, including Defendants Orfanedes and Farrell, tortuously interfered with, threatened, harmed Plaintiff's children, defamed, disparaged and cast Plaintiff in a false light to denigrate Plaintiff in an effort to undermine Plaintiff's ability to return to the helm of Judicial Watch or compete with Judicial Watch in the future.

36.     On April 12, 2006, Plaintiff filed a complaint against Defendant Judicial Watch and Defendant Fitton alleging that Defendants breached the Severance Agreement by (1) disparaging Plaintiff and portraying him in a false light (defamation); (2) mailing fraudulent solicitation letters to donors with Plaintiff's name and likeness after his resignation (violation of Section 43(a) of the Lanham Act); (3) violating Florida Statute 540.08 by using Plaintiff's name and likeness in the solicitation letters; and because of Defendants' misconduct, Plaintiff sought (4) rescission; (5) specific performance; and (6) damages. [D.C. Dkt. # 1].

37.     On May 1, 2006, Plaintiff filed his First Amended Complaint [Dkt. # 6] and on June 14, 2006, Plaintiff filed his Second Amended Complaint, which remained operative. [D.C. Dkt. # 12].

38.     On June 28, 2006, Defendants Judicial Watch and Fitton filed Counterclaims against Plaintiff [Dkt. # 14] and on December 3, 2007, they filed Amended Counterclaims, which remained operative. [D.C. Dkt. # 86].

39.     Defendants' Amended Counterclaims falsely and without legal bases alleged that Plaintiff breached the Severance Agreement by allegedly (1) failing to pay personal costs and

expenses; (2) failing to have his law firm pay its debt to Judicial Watch; (3) indemnification by Plaintiff for his law firm's non-payment; (4) trademark infringement; (5) unfair competition by false and/or misleading statements; (6) unfair competition by creating a connection with Judicial Watch; (7) cybersquatting; (8) disparagement by Defendant Judicial Watch; (9) disparagement by Defendant Fitton; (10) obtaining confidential information; and (11) violating a non-compete. *See* [D.C. Dkt. # 86].

40.    The Amended Counterclaims contained two false counts against Plaintiff for violations of the Lanham Act (15 U.S.C. § 1125(a)). Count V alleged that Plaintiff made false or misleading statements concerning the "nature, characteristics, qualities or geographic origin of Klayman and/or Klayman d/b/a Saving Judicial Watch's goods or services, as well as those of Judicial Watch." Similarly, Count VI alleged that "Klayman's false and/or misleading statements and representations are likely to cause the public and consumers to believe that Saving Judicial Watch is associated with, affiliated with, and/or sponsored by Judicial Watch." *Id*.

41.    None of the counts in Defendants' Amended Counterclaims addressed any alleged misrepresentation by Plaintiff about the reasons for his departure from Judicial Watch or that he was forced to resign. They only concerned Plaintiff's and his campaign Saving Judicial Watch's goods and services and Plaintiff by allegedly trying to associate himself with Judicial Watch. Nothing even implied that Plaintiff was forced to resign as a result of bad behavior even though Defendant Orfanedes falsely and fraudulently testified to this during the trial in the District Court.

42.    Moreover, the Severance Agreement itself stated that Plaintiff left to "pursue other endeavors" – which is consistent with his simultaneous run for the U.S. Senate in Florida, the testimony of Defendant Orfanedes and indeed Plaintiff's wife at the time which was prejudicially excluded by the District Court – and in fact praised Plaintiff for his service. [D.C.

Dkt. # 86, Ex. A at ¶ 18].

43.     Yet, Defendant Orfanedes, at the agreement, direction and ratification of Defendant Fitton and Defendant Farrell, falsely and fraudulently testified during trial that:

> I was obviously concerned that we could be subject to some sort of sexual harassment allegations or lawsuit. I wasn't sure if these were welcomed advances by Mr. Klayman. Obviously, that's an issue when you have someone – he was, at the time, a treasurer and on the board of directors. He used the title chairman. Obviously, there's a power relationship there. That's the kind of situation that is always, you know, of great concern when there's, perhaps, a romantic relationship or – there is a question about whether these are unreciprocated. So I was very concerned about potential sexual harassment allegations.

*Official Transcript*, Day 6, 1834:14-25, Exhibit 1.

44.     Defendant Fitton and Defendants Orfanedes and Farrell knew at the time of trial that they caused fraudulent, false information to be published to the jury, thereby committing a fraud on the District Court.

45.     *After twelve years of litigation*, having regrettably been forced to file a motion to disqualify the Magistrate Judge Kay who was acting at the direction of the presiding judge and three (3) concerning this presiding judge Defendant Kotelly, sanction orders levied against Plaintiff which refused to allow him to use virtually any exhibits, witnesses or discovery in trying this case, a serious car accident, the death of counsel's mother, other extenuating circumstances and scores of other motions submitted to the District Court which attempted to get it to administer the rule of law fairly, trial commenced on February 26, 2018.

46.     After a sixteen-day (16) trial, a jury returned a verdict in favor of Judicial Watch and Defendant Fitton on all remaining counts. Defendants had at their disposal *199 exhibits of which 84 were used* and *10 witnesses* through either live testimony or deposition designations that were read from by a Judicial Watch representative from the witness stand. The District Court incredibly allowed Plaintiff to have only <u>one exhibit</u> (the Severance Agreement) and <u>one witness</u>

(himself).

47.     On July 10, 2018, Plaintiff filed a Motion for Judgment as a Matter of Law, for a New Trial, or in the Alternative, for Remittitur of the Jury Verdict which specifically demonstrated how Defendants Judicial Watch and Fitton failed to prove each of their claims by a preponderance of the evidence. [D.C. Dkt. # 571].

48.     Moreover, Plaintiff showed and set forth how the jury was confused by how the case was tried and how failing to provide certain jury instructions was fatal to Plaintiff's case; he outlined the prejudicial remarks and biases directed at Plaintiff from the Court both before and during trial, and how – as a result of the District Court's intentional legal errors and bias and prejudice – the jury awarded a verdict that was a direct result of passion and prejudice.

49.     Where it is manifest that a jury was improperly influenced, a new trial is warranted. *See, e.g., Spar v. Obwoya*, 369 A.2d 173, 190 (D.C. 1977).

50.     On August 9, 2018, Defendants filed their opposition [D.C. Dkt. # 576] and on September 10, 2018, Plaintiff filed his reply. [D.C. Dkt. # 578].

51.     On March 18, 2019, the District Court denied Plaintiff's motion in its entirety and on the same day, issued a Judgment on the Verdict for Defendant Judicial Watch, Judgment on the Verdict for Defendant Fitton and a Final Judgment. [D.C. Dkts. # 580, 581, 582, 583, 584].

52.     After, on April 12, 2019, Plaintiff filed a Motion for Reconsideration. [D.C. Dkt. # 587].  This motion was denied on August 7, 2019.

53.     On July 24, 2019, Defendants Judicial Watch and Fitton filed writs of garnishments against Plaintiff's wages which the District Court temporarily stayed on the same day [D.C. Dkts. # 595, 596]. On August 7, 2019, the District Court denied Plaintiff's Motion for Reconsideration and lifted the stays. [D.C. Dkt. # 603].

54.     Upon reviewing the record and testimony, Plaintiff discovered that not only did Defendant Fitton and Defendant Orfanedes provide false testimony, as pled herein, to the jury concerning the reasons why Plaintiff left Judicial Watch, but their counsel, Mr. Richard Driscoll, also provided the jury with false, fabricated, concocted and "made up" numbers, purporting to account for a loss of profits to Judicial Watch during Plaintiff's Saving Judicial Watch campaign.

55.     In his closing argument, Mr. Driscoll intentionally and falsely published to the jury:

> But in addition to that, you heard the testimony of Steve Andersen, and he talked about multi-year donors. It was the one segment of donors where they could really isolate a cause to affect relationship between Saving Judicial Watch and the dropoff in those donors. Those are the people who donate year over year. And during 2006, there was a $500,000 drop; and in 2007, there was a $1,400,000 drop. We're going to ask you for those damages too . . .

*Official Transcript*, Day 12, 3683:21-25 – 3684:1-3. This recitation to the jury was consistent with the demonstrative exhibit Defendants' counsel sought to include (but was physically excluded) and which he read from in front of the jury.

56.     The jury returned a total award of $2,000,000 for alleged trademark infringement ($750,000), Lanham Act violations ($1,000,000) and disparagement ($250,000), all of which Defendants included as a "loss" of profits to Judicial Watch.

57.     **But**, Judicial Watch Director of Development Steven Anderson testified that:

> Mr. Driscoll: So starting with the year 2005 and looking at the multiyear donors, what types of information would you observe, say, for 2005?
> Mr. Andersen: 2005, those donors donated a total of about **$4.8 million** to our organization. The next year that slipped down to about **$4.3 million**.
> Mr. Driscoll: What year was that?
> Mr. Andersen: And that was 2006.
> Mr. Driscoll: Okay.  Mr. Andersen: 2007, it dropped off precipitously to **$3.4 million**, which is very significant.

*Official Transcript*, Day 10, 3064:2-12 (emphasis added).

58.     Notwithstanding the fact that Defendant Judicial Watch and Defendant Fitton

provided no documentary evidence to back up or support these alleged "loss" claims, and even assuming that the numbers Steve Anderson testified to were accurate – which Plaintiff disputes – the alleged $1.4 million dollar loss for 2006 is a fabricated and manufactured number. If donors donated a total of about $4.8 million in 2005 and the next year it slipped to $4.3, that accounts for the alleged $500,000 loss in 2006. But, even if in 2007 donations slipped from $4.3 to $3.4, the total loss for 2007 would be $900,000, not $1.4 million as Defendants' counsel fraudulently submitted to the jury and which the jury prejudicially reacted to.

59.     The total alleged loss is $1.4 million for both years; not only for the year 2007. The jury inappropriately considered $500,000 "extra dollars" and awarded an amount based on Defendants' counsel's intentional and fraudulent misrepresentations. A "plaintiff can recover no more than the loss actually suffered." *Kassman v. Am. Univ.*, 546 F.2d 1029, 1033 (D.C. Cir. 1979).

60.     For this reason among others, on August 19, 2019, Plaintiff filed a comprehensive Motion for Reconsideration of Plaintiff's Motion for Voluntary Recusal or Disqualification, Motion for Reconsideration of the Court's Order Denying motion for Judgment Notwithstanding the Verdict and Lifting Temporary Stay on Writs of Garnishment and Plaintiff's Motion for Order to Show Cause and to Set Aside Judgment of March 18, 2019 for Fraud, Misrepresentation, and/or Misconduct by Defendants/Counterclaimant's Thomas J. Fitton and Judicial Watch. [D.C. Dkt. # 606].

61.     Only three (3) days later, on August 22, 2019, the District Court characteristically summarily denied it with no bona fide analysis or reasoning, again regrettably exhibiting its rank extrajudicial bias and prejudice, which had been manifest not just throughout this case but in the past in other cases where Plaintiff was counsel of record. [D.C. Dkts. # 607, 608].

## BACKGROUND FACTS FOR THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA CASE

62.     On February 11, 2019, Plaintiff regrettably was forced to file another action against Defendant Fitton in Plaintiff's home state of Florida for defamation, defamation per se and defamation by implication. *Klayman v. Fitton*, 19-cv-20544 (S.D. Fla.).

63.     The Complaint alleged that Defendant Fitton had engaged in a pattern and practice of defaming and disparaging Plaintiff since his departure from Judicial Watch in 2003. For example, in 2013, Plaintiff obtained a jury verdict in his favor in the U.S. District Court for the Southern District of Florida against Judicial Watch for defamation, which included an award of punitive damages. [Fla. Dkt. # 1].

64.     The Complaint also alleged that Defendant Fitton and Roger Stone, the individual Special Counsel Robert Mueller indicted for among other things, perjury, witness tampering and obstruction of justice, are working together and acting in concert to defame Plaintiff and his client, Dr. Jerome Corsi ("Dr. Corsi"), who is Person 1 in the Mueller indictment against Roger Stone. By defaming Plaintiff and Dr. Corsi, Defendant Fitton and Roger Stone were and are working together to not only intimidate Dr. Corsi and his counsel but also to damage their reputations and coerce and threaten Dr. Corsi to testify falsely if subpoenaed as a material witness. *Id*. at ¶ 10.

65.     Before Roger Stone was indicted, he appeared on "Infowars" where he made several false, misleading and defamatory statements concerning Plaintiff.

66.     Roger Stone, acting through Defendant Fitton, falsely published, **"[h]e [Plaintiff] was ousted at Judicial Watch. Ask Tom Fitton why he left. He left because of a sexual harassment complaint."** *Id*. at ¶ 16 (emphasis added).

67.     Plaintiff alleged that Defendant Fitton knew Plaintiff was not "ousted" from

16

Judicial Watch as a result of a sexual harassment complaint but actually left voluntarily to run for the U.S. Senate.

68.     On June 6, 2019, Plaintiff deposed Defendant Fitton and during the deposition, he was forced to admit that Plaintiff was in fact not ousted because of a sexual harassment complaint. Plaintiff asked Defendant Fitton: "Q: I'm taking attorneys out of this question. I'm saying you have told others who aren't attorneys over the course of the last 16 years since I left Judicial Watch that I was ousted because of a sexual harassment complaint? A: **No, because that's not true. You weren't ousted as a result of a sexual harassment complaint**." [Fla. Dkt. # 46, p. 12-13] (emphasis added). *See* Exhibit 2.

69.     The false facts that what Defendant Judicial Watch, Defendant Fitton, Defendant Orfanedes and Defendant Farrell and their witnesses and counsel submitted to the jury in the District Court case, however, was that Plaintiff was a violent, sexual harasser who was forced to resign from his position at Judicial Watch because Plaintiff was in effect forced out due to his sexual harassment of an employee, the office manager, who Defendants neither had deposed nor called as a witness at trial for obvious reasons, as this would have disproved their false and misleading testimony.

70.     The fraud, misrepresentations, misconduct and fraud on the Court committed by Defendant Judicial Watch, Defendant Fitton, Defendant Orfanedes and Defendant Farrell, their counsel and other witnesses are all sufficient reasons to relieve Plaintiff from the jury verdict and judgment pursuant to FRCP 60(b)(3), 60(b)(6), and 60(d)(3) as they severely prejudiced Plaintiff and turned the jury against him without bases in fact or law.

71.     Even if Plaintiff was a violent abuser and sexual harasser and the so-called evidence was relevant – which it was not here– the District Court *still* should not have allowed

the jury to hear such inflammatory evidence because its probative value is seriously outweighed by the prejudice. Evidence cannot be used "to show criminal disposition," propensity, or bad character. *United States v. Moore*, 709 F.3d 287, 296 (4th Cir. 2013). Federal Rule of Evidence 404's well-recognized principle that showing a witness has a law-breaking character is "a purpose prohibited by Fed. R. Evid. 404(b)." *United States v. Hands*, 184 F.3d 1322, 1328 n.9 (11th Cir. 1999); *see also Moore*, 709 F.3d at 296 (new trial granted because the district court improperly admitted evidence of the defendant's prior possession of a different type of firearm "to establish [his] criminal disposition"); *see also United States v. Thomas*, 321 F.3d 627, 637 (7th Cir. 2003) (new trial granted where evidence of prior gun possession "appeal to Thomas's propensity to carry guns . . .").

72.     Federal appellate courts have thrown out jury verdicts on this prejudicial basis alone. For example, in *United States v. Hands*, 184 F.3d 1322 (11th Cir. 1999), the court stated that "**few would doubt that evidence of violent spousal abuse**" falls into a category of evidence "**particularly likely to incite a jury to an irrational decision.**" *Id*. at 1328-29 (emphasis added). The alleged spousal abuse in *Hands*, inflicted by a defendant charged with drug-related offenses, was held to be unduly prejudicial and therefore inadmissible because of its "inflammatory nature" and tendency to produce "visceral reactions." *Id*. at 1329. The U.S. Court of Appeals for the Eleven Circuit reversed and remanded. *Id*. at 1335. The *Hands* court found that not only was the alleged abuse irrelevant but even if it were relevant, the "the evidence did not meet the balancing test set out in Federal Rule of Evidence 403." *Id*. at 1328. "[D]omestic violence evidence's prejudicial nature so heavily outweigh[s] its probative value that [a] district court should have excluded it." *United States v. Church*, 955 F.2d 688, 703 (11th Cir. 1992); *see also State v. Zamudio*, 57 Ore. App. 545, 645 P.2d 593, 596 (1982) ("The public stigma attached

to a husband who beats his wife is significant. The inflammatory nature of such a characterization is arguably more substantial than the purchase of marijuana discussed in [another case]."). The District Court was aware of and knowledgeable about this black-letter, established law but willfully permitted Defendants to severely prejudice the jury, over Plaintiff's objections, based on her extrajudicial bias and prejudice against Klayman.

## DEFENDANTS' D.C. CODE VIOLATIONS
### Violation of D.C. Code § 22-2402 (Perjury)

73.     D.C. Code § 22-2402(a)(1) states: "[a] person commits the offense of perjury if: (1) having taken an oath or affirmation before a competent tribunal, officer, or person, in a case in which the law authorized such oath or affirmation to be administered, that he or she will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by that person subscribed is true, willfully and contrary to an oath or affirmation states or subscribes any material matter which he or she does not believe to be true and which is in fact not true[.]" D.C. Code § 22-2402(a)(1).

74.     D.C. Code § 22-2402(a)(3) states: "[a] person commits the offense of perjury if: . . . (3) [i]n any declaration, certificate, verification, or statement made under penalty of perjury in the form specified in § 16-5306 or 28 U.S.C. § 1746(2), the person willfully states or subscribes as true any material matter that the person does not believe to be true and that in fact is not true." D.C. Code § 22-2402(a)(3).

75.     Defendant Orfanedes, as a director of Judicial Watch and a principle witness in the trial in the District Court, as directed to and ratified by Defendant Fitton and Defendant Farrell as directors of Judicial Watch and in their individual capacities, committed perjury when he testified falsely that he was "concerned that we could be subject to some sort of sexual harassment allegations or lawsuit . . . Obviously, there's a power relationship there. That's the

kind of situation that is always, you know, of great concern when there's, perhaps, a romantic relationship or – there is a question about whether these are unreciprocated. So I was very concerned about potential sexual harassment allegations," among his other false, misleading and perjury-laden testimony. *See* Exhibit 1.

### Violation of D.C. Code § 22-2403 (Subornation of Perjury)

76.     D.C. Code § 22-2403 states: "[a] person commits the offense of subornation of perjury if that person willfully procures another to commit perjury." D.C. Code § 22-2403.

77.     Defendant Fitton and Defendant Farrell, as directors of Judicial Watch and individually, suborned perjury, and Defendant Kotelly acquiesced and furthered this perjury when Defendants Fitton and Farrell willfully directed and procured Defendant Orfanedes – as in particular the president of Judicial Watch who had authority over him – to testify untruthfully in the District Court concerning the reasons why Plaintiff left Judicial Watch.

78.     On information and belief, Defendant Fitton also had at all material times a non-professional undisclosed "personal relationship" with Defendant Orfanedes and thus is able to exert undue influence over him in a personal capacity.

### FIRST CAUSE OF ACTION
### Relief from a Judgment or Order Pursuant to FRCP 60(b)(3)
### (Fraud, Misrepresentation, Misconduct)

79.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding and following paragraphs of this Amended Complaint as if fully set forth herein.

80.     FRCP 60(b)(3) provides relief from a judgment or order based on "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party[.]" Fed. R. Civ. P. 60(b)(3).

81.     Pursuant to District of Columbia law, the court must set aside a final judgment for fraud, misrepresentation or other misconduct by an adverse party. *Mayfair Extension, Inc. v. Magee*, 241 F.2d 453, 454 (D.C. Cir. 1957).

82.     FRCP 60(b)(3) codifies a "historical power of equity to set aside fraudulently [and improperly] begotten judgments' [through misconduct]. . . [which] is necessary to [uphold] the integrity of the courts . . ." *Chambers v. NASCO*, 501 U.S. 32, 44 (1991).

83.     Defendants' fraud, misrepresentation and misconduct, and in the case of Defendant Kotelly the acquiesce and furtherance of this fraud and misconduct throughout the trial in the District Court actually and severely prejudiced Plaintiff and prevented Plaintiff from presenting his case fully and fairly because, among other reasons, the jury awarded an additional $500,000 that was not only not supported by documentary or other evidence, but that also was not even testified to. As pled above, the actual losses Defendants claim they sustained – however untrue – did not add up to what Defendants' counsel fraudulently submitted and published to the jury.

84.     The false testimony perpetrated by Defendant Orfanedes at the direction of Defendants Fitton and Farrell during his examination and the ratification of that false testimony by Defendant Fitton and Defendant Farrell, severely prejudiced Plaintiff such that relief from judgment is warranted because they knew that Plaintiff was NOT forced to resign from Judicial Watch because of a sexual harassment complaint and Defendant Fitton, when pressed in another case as set forth in preceding paragraphs of this Complaint, was forced to admit it.

85.     Defendants' misconduct throughout the trial in the District Court and thereafter constitutes prima facie fraud, misrepresentation and misconduct within the meaning of FRCP 60(b)(3).

86.     Defendants' misconduct in this regard constitutes perjury and subornation of perjury, much less severe misrepresentation and misconduct.

### Prayer

87.     As a direct and proximate result of Defendants' fraud, misrepresentations and misconduct, and in the case of Defendant Kotelly the acquiescence and furtherance in this fraud and misconduct including but not limited to perjury and subornation of perjury, Plaintiff has been severely damaged and continues to be severely damaged such that he satisfies FRCP 60(b)(3)'s requirement for relief from a judgment or order.

88.     Plaintiff prays that this Court itself or order Defendant Kotelly to set aside and vacate the District Court's judgment which is prohibitive and will financially ruin Plaintiff.

89.     In addition, Plaintiff prays, with the exception of Defendant Kotelly, for damages as a result of Defendants' fraud, misrepresentations and other misconduct, which damage is ongoing and increasing due to the loss of reputation, financial damage and pain and suffering, in an amount in excess of $2,800,000 and punitive damages in an amount in excess of 5% of Defendants' combined net worth, jointly and severally, as joint tortfeasors.

### SECOND CAUSE OF ACTION
### Relief from a Judgment or Order Pursuant to FRCP 60(b)(6)
### (Other Reasons to Justify Relief)

90.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding and following paragraphs of this Amended Complaint as if fully set forth herein.

91.     FRCP 60(b)(6) provides relief from a judgment or order based on "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

92.     A court has discretion to grant relief pursuant to FRCP 60(b)(6) where it is "appropriate to accomplish justice[.]" *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949).

93.     FRCP 60(b)(6) "grants federal courts broad authority to relieve a party from a final judgment upon such terms as are just." *Salazar ex rel Salazar v. District of Columbia*, 633 F.3d 1110, 1116 (D.C. Cir. 2011) (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 (1988)).

94.     Where a party raises an issue "so central to the litigation that it shows the initial judgment to have been manifestly unjust, reconsideration under rule 60(b)(6) is proper," even if the initial omission was "inexcusable." *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980).

95.     Defendants' fraud, misrepresentation and other misconduct throughout the trial in the District Court and thereafter constitute reasons that justify relief from a final judgment pursuant to FRCP 60(b)(6).

96.     The fraud, misrepresentation and misconduct described herein, including but not limited to perjury, subornation of perjury, false statements and intentionally falsifying testimony and well as other related misconduct as pled in this Complaint, constitutes extraordinary circumstances that warrant relief pursuant to FRCP 60(b)(6).

### Prayer

97.     As a direct and proximate result of Defendants' misconduct, including but not limited to perjury and subornation of perjury, Plaintiff has been severely damaged and continues to be severely damaged such that he satisfies the "justifies relief" requirement of FRCP 60(b)(6) for relief from a judgment or order.

98.     Plaintiff prays that this Court itself  or in the alternative  order Defendant Kotelly to set aside and vacate the District Court's judgment which is prohibitive and will financially ruin Plaintiff.

99.     In addition, Plaintiff prays for damages (with the exception of Defendant Kotelly) as a result of Defendants' fraud, misrepresentations and other misconduct, which damage is ongoing and increasing due to the loss of reputation, financial damage and pain and suffering, in an amount in excess of $2,800,000 and punitive damages in an amount in excess of 5% of Defendants' combined net worth, jointly and severally, as joint tortfeasors.

### THIRD CAUSE OF ACTION
**Relief from a Judgment or Order Pursuant to FRCP 60(d)(3)**
**(Fraud on the Court)**

100.     Plaintiff re-alleges and incorporates by reference the allegations in the preceding and following paragraphs of this Amended Complaint as if fully set forth herein.

101.     FRCP 60(d)(3) provides relief from a judgment or order based on "fraud on the court." Fed. R. Civ. P. 60(d)(3).

102.     Pursuant to District of Columbia law, where a falsification of evidence occurs in the midst of judicial proceedings and is specifically directed at affecting those proceedings, it is termed "fraud on the court." Dismissal or default is appropriate when a party commits fraud on the court. *See Breezedale Ltd. v. Dickinson*, 879 A.2d 957 (D.C. 2005).

103.     Defendants' misconduct, acquiesced in and furthered by Defendant Kotelly, had a direct effect on the integrity of the court's function.

104.     The fabrications, concealments and other misconduct were material bases for the judgment and not merely relevant to a peripheral issue because the jury based its verdict on the intentionally fraudulent "loss of profits."

105.     Plaintiff showed diligence after judgment in discovering the fraud as soon as could reasonably be expected.

106.    The evidence underlying the judgment was fabricated and/or concealed and was the result of Defendants' misconduct.

107.    Defendants' misconduct was a direct assault on the integrity of the judicial process.

108.    Defendants' misconduct throughout the trial in the District Court and thereafter constitutes fraud on the court within the meaning of FRCP 60(d)(3) and the common law.

**Prayer**

109.    As a direct and proximate result of Defendants' fraud on the court, including but not limited to perjury, subornation of perjury, misrepresentation and misconduct, Plaintiff has been severely damaged and continues to be severely damaged such that he satisfies FRCP 60(d)(3)'s fraud on the court requirement for relief from a judgment or order.

110.    Plaintiff prays that this Court itself or alternative to order Defendant Kotelly to set aside and vacate the District Court's judgment which is prohibitive and will financially ruin Plaintiff.

111.    In addition, Plaintiff prays for damages (with the exception of Defendant Kotelly) as a result of Defendants' fraud, misrepresentations and other misconduct, which damage is ongoing and increasing due to the loss of reputation, financial damage and pain and suffering, in an amount in excess of $2,800,000 and punitive damages in an amount in excess of 5% of Defendants' combined net worth, jointly and severally, as joint tortfeasors.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Larry Klayman prays for judgment against Defendant Judicial Watch, Defendant Fitton, Defendant Orfanedes, Defendant Farrell and Defendant Kotelly as follows:

(1)      Relief from the District Court's entry of judgment on the basis of fraud, misrepresentation and/or misconduct (FRCP 60(b)(3));

(2)      Relief from the District Court's entry of judgment because fraud, misrepresentation and the misconduct of Defendants justifies relief (FRCP 60(b)(6));

(3)      Relief from the District Court's entry of judgment on the basis of fraud, misrepresentation and misconduct on and concerning the Court (FRCP 60(d)(3));

(4)      That this Court vacate and set aside the District Court's judgment or alternatively order Defendant Kotelly to vacate and set aside the entry of judgment and the judgment,  which is prohibitive and will financially ruin Plaintiff;

(5)      Discovery and then trial based on Defendant Fitton's, Defendant Orfanedes and Defendant Farrell's  fraud, misrepresentations, subornation of perjury, perjury and other misconduct;

(6)      An award of actual and compensatory damages (with the exception of the Defendant Kotelly) for the misrepresentations, misconduct and fraud, against all Defendants, jointly and severally as joint tortfeasors, alleged herein in an amount in excess of $2,800,000 and punitive damages in an amount in excess of 5% of the Defendants' combined net worth, jointly and severally and as joint tortfeasors;

(7)      An award of attorneys' fees and costs;

(8)      Any other relief the Court deems just and proper.

Dated:  September 12, 2019                           Respectfully Submitted,


                                                     /s/ Larry Klayman
                                                    Larry Klayman, Esq.
                                                    D.C. Bar No. 334581
                                                    The Klayman Law Group, P.A.

2020 Pennsylvania Ave. NW, Suite 800
Washington, DC 20006
Tel: (561) 558-5336
Email: leklayman@gmail.com

*Plaintiff Pro Se*