## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **LARRY KLAYMAN** *individually*,<br><br>Plaintiff,<br><br>v.<br><br>**JUDICIAL WATCH, INC.** *A District of Columbia Corporation, et al.*<br><br>Defendants. | Civil Action No. 19-cv-2604 (TSC) |

## <u>MEMORANDUM OPINION</u>

For the reasons set forth below, the court will dismiss this action *sua sponte*.

## A. BACKGROUND

Plaintiff Larry Klayman brings this action against Judicial Watch, Incorporated, its Directors, Thomas J. Fitton, Paul Orfanedes, Christopher Farrell, and United States District Court Judge Colleen Kollar-Kotelly.  These Defendants are the same persons Klayman sued in *Klayman v. Judicial Watch, Inc.*, 6-cv-670-CKK (D.D.C) (hereinafter "*Judicial Watch I*"), except for Judge Kollar-Kotelly, who presided over the earlier case.[1]

An attorney proceeding *pro se*, Klayman is the "founder and former Chairman, General Counsel and Treasurer of Judicial Watch."  *Klayman v. Judicial Watch, Inc.*, 247 F.R.D. 10, 11 (D.D.C. 2007).  He left Judicial Watch in 2003, at which time he executed a severance agreement with the JW Defendants specifying that his departure would be "treated for all

---

[1]   The court will refer to Judicial Watch, Fitton, Orfanedes, and Farrell collectively as the "JW Defendants," unless otherwise necessary for the sake of clarity.

purposes as a voluntary resignation." *Id*. at 11–12, 14 (internal quotations omitted).  The agreement and subsequent conflicts between Klayman and the JW Defendants formed the basis of *Judicial Watch I*, which involved a variety of claims, including breach of contract, Lanham Act violations, and defamation.  *Klayman v. Judicial Watch, Inc.*, 628 F. Supp. 2d 112, 117 (D.D.C. 2009).

During *Judicial Watch I*, Klayman filed at least five motions for recusal/disqualification of both Judge Kollar-Kotelly and Magistrate Judge Alan Kay, who was also assigned to the case. *See Judicial Watch I*, 6-cv-670-CKK, ECF Nos. 298, 304, 414, 587, 606.  Those motions were denied.  *Id.*, ECF Nos. 314, 316, 425, 603, 607.  Klayman also pursued one interlocutory appeal, *id.*, ECF No. 320, but the Court of Appeals dismissed the matter for failure to prosecute. *Klayman v. Judicial Watch*, 9-7068 (D.C. Cir. Dec. 1, 2009).  He also filed three unsuccessful mandamus petitions, two of which sought to remove Judge Kollar-Kotelly.  *See In re Klayman*, 8-5218; 13-5258; 18-7024 (D.C. Cir.).  The Court of Appeals denied the petitions and Klayman unsuccessfully sought *certiorari* in one instance.  *See In re Klayman*, 13-5258 (D.C. Cir.).

After resolution of some claims on summary judgment, *Judicial Watch I* ended with a verdict in favor of the defendants, who had countersued Klayman.  *Judicial Watch I*, 6-cv-670-CKK, 2019 WL 1244079, *at 31 (D.D.C. Mar. 18, 2019).  Klayman responded by filing several unsuccessful Rule 50 and Rule 59 motions to alter the judgment or grant a new trial.  *See Judicial Watch, Inc.*, 6-cv-670-CKK, ECF Nos. 571, 587.

Undeterred, Klayman filed a motion pursuant to Rule 60 seeking relief from the *Judicial Watch I* final judgment.  *Id.*, ECF No. 587.  He raised numerous challenges, including the amount of the damage award, the judge's rejection of certain jury instructions and defenses.  He

also continued asking Judge Kollar-Kotelly to disqualify herself due to alleged personal animus, judicial bias, and prejudice against him.  *Id.* at 15.

Judge Kollar-Kotelly denied the motion, *Judicial Watch, Inc.*, 6-cv-670-CKK, ECF Nos. 603, 604, and Klayman sought reconsideration, raising many of the same arguments he had raised in the initial motion, including the allegations of judicial bias.  *Id.*, ECF No. 606.  He also challenged the Judge's decision to allow his former wife to testify about his alleged spousal abuse.  *Id.* at 9–12.  He further claimed to have recently discovered evidence that "Defendants" falsely testified during *Judicial Watch I*.  *Id.* at 9–12, 22.  Pointing to Fitton's deposition testimony during a Florida lawsuit, Klayman claimed he had evidence that the "Defendants" committed fraud during *Judicial Watch I*, when they testified about Klayman's reasons for leaving Judicial Watch.  *Id*. at 9–12, 22–24.  Klayman claimed Judge Kollar-Kotelly's alleged bias against him was the reason she allowed the testimony of his former wife and the JW Defendants' "fraudulent" testimony, which he contends was prejudicial, negatively impacted the jury decision, and justified setting aside the jury verdict due to "fraud on the court."  *Id*. at 7, 9–12, 23.

Judge Kollar-Kotelly denied the motion to reconsider, finding, among other things, that there was no evidence of fraud.  *Judicial Watch, Inc.*, 6-cv-670-CKK, ECF No. 607; ECF No. 608, Mem. Op. at 2–4.  She also found that Klayman had failed to meet the high standard to establish fraud on the court.  *Id*., ECF No. 608.  At 7:10 p.m. on August 28, 2019, Klayman moved the court to stay enforcement of the judgment pending appeal, arguing that the verdict and judgment would likely be reversed because the court purportedly permitted the Defendants to give false and prejudicial testimony.  *Id.*, ECF No. 609, at 2–3.

Less than thirty minutes later, Klayman filed this case (hereinafter "*Judicial Watch II*")
seeking Rule 60 relief from the judgment in *Judicial Watch I*.  He named the same JW
Defendants from *Judicial Watch I*, and alleged fraud, misrepresentation, misconduct, fraud on
the court, perjury, and subornation of perjury.  (ECF No. 1, Compl.)  Klayman continued to
assert that Judge Kollar-Kotelly's rulings against him were evidence of bias.  (Compl. ¶¶ 44–47.)
Despite the clear connection to *Judicial Watch I*, on the *Judicial Watch II* case coversheet
Klayman checked "No" in response to the query "Related Case(s) If Any."  (*See* ECF No. 1-7;
ECF No. 2.)  This representation violated Local Rule 40.5(b)(2), which provides that "parties
shall notify the Clerk of the existence of related cases . . . . [a]t the time of filing any civil,
including miscellaneous, action" and "indicate, on a form to be provided by the Clerk, the name,
docket number and relationship of any related case pending in this Court or in any other United
States Court."[2]

Before Judge Kollar-Kotelly could rule on his motion to stay, Klayman filed a Notice of
Appeal in *Judicial Watch I*, challenging Judge Kollar-Kotelly's trial decisions, as well as her
denial of his post-trial motions.  *Judicial Watch I*, 6-cv-670-CKK, ECF No. 613.  He raised
many of the same arguments he had previously raised and asked the Court of Appeals to assign a
new trial judge to the case.  *Klayman v. Judicial Watch, Inc.*, 19-7105 (D.C. Cir.), ECF. No.
1863536.

---

[2]   This representation likely violated the Rules of Professional Conduct governing members of
the D.C. bar.  *See* D.C. R. of Prof'l Conduct R. 3.3(a)(1) ("A lawyer shall not knowingly . . .
[m]ake a false statement of fact or law to a tribunal or fail to correct a false statement of material
fact or law previously made to the tribunal by the lawyer, unless correction would require
disclosure of information that is prohibited by Rule 1.6."); *id.* 3.4(c) ("A lawyer shall not . . .
[k]nowingly disobey an obligation under the rules of a tribunal except for an open refusal based
on an assertion that no valid obligation exists.").

Several days later, on September 10, 2019, *Judicial Watch II* was randomly assigned to the undersigned.  Upon review of the Complaint, which specifically noted that Klayman was proceeding *pro se*, and was challenging the judgment in *Judicial Watch I*, this court transferred the case to the court's calendar committee consistent with Local Civil Rule 40.5 as an earlier related case.[3]  The following day, the calendar committee reassigned *Judicial Watch II* to Judge Kollar-Kotelly.  (ECF No. 4.)  A little over four hours later, Klayman filed an Amended Complaint, (ECF No. 5, Am. Compl.), adding Judge Kollar-Kotelly as a defendant in *Judicial Watch II,* and the calendar committee transferred the case back to the undersigned.  *See* LCvR Rule 40.5(c)(2) ("[If] good cause for the transfer [to the Judge with the earlier related case] does not exist, [the committee] may return the case to the transferring judge.")

Klayman brings claims for relief from judgment pursuant to Federal Rule of Civil Procedure 60.  He asks this court to vacate the judgment in *Judicial Watch I* or alternatively asks this court to order Judge Kollar-Kotelly to vacate the judgment.  He further seeks damages from the JW Defendants for the alleged fraud and misrepresentations they committed during the *Judicial Watch I* trial but does not seek damages from Judge Kollar-Kotelly.

---

[3]  "Civil, including miscellaneous, cases are deemed related when the earliest is still pending on the merits in the District Court and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction or (iv) involve the validity or infringement of the same patent.  Notwithstanding the foregoing, a case filed by a *pro se* litigant with a prior case pending shall be deemed related and assigned to the judge having the earliest case."  LCvR 40.5(a)(3).  "Where the existence of related cases in this Court is revealed after the cases are assigned, the judge having the later-numbered case may transfer that case to the Calendar and Case Management Committee for reassignment to the judge having the earlier case."  LCvR 40.5(c)(2).

## B.  STANDARDS OF REVIEW

### 1.  **Pro Se Litigants**

Normally, courts in this Circuit "afford a liberal reading to a complaint filed by a *pro se* plaintiff." *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014) (citations omitted). The D.C. Circuit "has not yet decided, however, whether that rule applies when the *pro se* plaintiff is a practicing lawyer like Klayman." *Id*. (citations omitted).  Nonetheless, several courts in this district have found that *pro se* attorney litigants are "not automatically subject to the very liberal standards afforded to a non-attorney *pro se* plaintiff because an attorney is presumed to have a knowledge of the legal system and need less protections from the court." *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 234 (D.D.C. 2007); *see also Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009); *Penkoski v. Bowser*, No. 20-CV-01519 (TNM), 2020 WL 4923620, at \*14 (D.D.C. Aug. 21, 2020).

Regardless of whether the court applies the less stringent pleading standard, a complaint "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, at 678–79).  "Factual allegations must be enough to raise a right to relief above the speculative level" and move the plaintiff's claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555, 570 (2007).

Given Klayman's thirty-five years of practice in this court[4] and his extensive experience with federal litigation,[5] the court holds his complaint to a more stringent pleading standard than

---

[4]  The court takes judicial notice of the fact that the United States District Court for the District of Columbia's records indicate Klayman was admitted to practice in this court in 1985.

[5]  A February 8, 2021 PACER search reveals that Klayman has represented himself or Judicial Watch in at least 59 federal court matters.

that of the typical non-attorney pro se litigant.  But even if this court were to apply the more lenient standard, it would still dismiss this action.

2. ***Sua Sponte* Dismissal**

Pursuant to 28 U.S.C. § 1915, courts are authorized to dismiss an action "at any time if the court determines" the action is "frivolous," "malicious," or "fails to state a claim on which relief may be granted."  28 U.S.C. §§ 1915(e)(2)(B)(i)-(ii).  "Dismissal remains appropriate where the plaintiff's complaint provides no factual or legal basis for the requested relief." *Thomas v. Wilkins*, 61 F. Supp. 3d 13, 17 (D.D.C. 2014), *aff'd,* No. 14-5197, 2015 WL 1606933 (D.C. Cir. Feb. 23, 2015) (citation and internal quotation marks omitted).

## C.  ANALYSIS

This case is based on Klayman's allegation that one or more of the JW Defendants committed fraud by making false statements while testifying in *Judicial Watch I*, and that Judge Kollar-Kotelly purportedly "has a conflict of interest" and "furthered the fraud and other misconduct."  (Am. Compl. ¶ 7.)  Klayman contends the fraud in *Judicial Watch* entitles him to relief from the judgment pursuant to Rules 60(b)(3), 60(b)(6) and 60(d)(3).  (Am. Compl. ¶¶ 43, 79–96.)

### 1.  **Klayman has not pled facts supporting his fraud allegations.**

A fraud claim requires a "false representation."  *Hall v. Nielsen*, No. 18-cv-461 (JEB), 2018 WL 5840663, at *8 (D.D.C. Nov. 8, 2018) (citations omitted).  The purported "fraud" Klayman claims to have recently discovered rests on his mischaracterization of the testimony in both *Judicial Watch I* and the Florida lawsuit.  Klayman alleges that despite the fact that he voluntarily resigned from Judicial Watch, the JW Defendants "falsely and fraudulently testified .

. . during the trial" that he left because of sexual harassment allegations.  (Am. Compl. ¶¶ 30–33, 41–44, 54.)  He further asserts that Fitton's subsequent testimony in a Florida lawsuit provides evidence of the alleged fraud.  (Am. Compl.  ¶¶ 68–69.)  The record does not support either assertion.

During Orfanedes' trial testimony in *Judicial Watch I*, he was asked "What was it about the circumstances that caused your concern?"  He responded that he had two concerns.[6] (Compl., Ex. 1.)  First, he was concerned about "allegations" that Klayman gave "this individual" Judicial Watch funds to further Klayman's romantic interests.  (*Id.*)  Second, he "was obviously concerned that [Judicial Watch] could be subject to some sort of sexual harassment allegations or lawsuit. . . ."  (*Id.*)[7]  Orfanedes did not testify that Klayman left Judicial Watch because of sexual harassment allegations, but that Orfanedes was concerned about <u>allegations</u> circulating that Klayman had sexually harassed someone—allegations that might result in a lawsuit.  Thus, Klayman has not presented evidence supporting his contention that one of the JW

---

[6]   Klayman provided only one page of the transcript, omitting the preceding testimony that would have provided broader context to this line of questioning.

[7]   Orfanedes testified:

> I was obviously concerned that we could be subject to some sort of sexual harassment allegations or lawsuit.  I wasn't sure if these were welcomed advances by Mr. Klayman.  Obviously, that's an issue when you have someone – he was, at the time, a treasurer and on the board of directors.  He used the title chairman. Obviously, there's a power relationship there.  That's the kind of situation that is always, you know, of great concern when there's, perhaps, a romantic relationship or – there is a question about whether these are unreciprocated.  So I was very concerned about potential sexual harassment allegations.

(Compl., Ex. 1., at 2.)

Defendants provided "false testimony . . . to the jury concerning the reasons why [Klayman] left Judicial Watch."  (Am. Compl. ¶ 54; *see id.* ¶¶ 66, 75, 84.)

Also unavailing is Klayman's reliance on evidence in the Florida litigation that allegedly establishes fraud in *Judicial Watch I*.  Klayman sued Fitton in Florida for defamation, claiming that Fitton told Roger Stone that Judicial Watch ousted Klayman because of sexual harassment. *Klayman v. Fitton*, 19-cv-20544-JEM (S.D. Fla.), Compl. ¶¶ 16–20.  During his deposition in the Florida case, Fitton was asked if he had told anyone that Klayman had been ousted for sexual harassment and he responded that he had not done so because Klayman had not been ousted for sexual harassment.[8]  (*Id.*)  Fitton's testimony does not imply that Orfanedes testified falsely.

---

[8]   Fitton testified:

| KLAYMAN: | Are you saying that you never told anyone that I was -- regardless -- let's take attorneys out of it.  Have you ever -- you have told other people in addition to -- strike that.  You have told other people excluding attorneys that I was ousted from Judicial Watch because of a sexual harassment complaint? |
|---|---|
| A: | You have to ask the question again. |
| KLAYMAN: | Read it back, please. |
| A: | Please. |
| KLAYMAN: | Let me rephrase it.  I'm taking attorneys out of this question.  I'm saying you have told others who aren't attorneys over the course of the last 16 years since I left Judicial Watch that I was ousted because of a sexual harassment complaint? |
| A: | No, because that's not true.  You weren't ousted as a result of a sexual harassment complaint. |

(Compl., Ex. 2, Fitton Dep. at 44–45.)

Moreover, Klayman's view that Fitton "was forced to admit that Plaintiff was in fact not ousted because of a sexual harassment," (Am. Compl. ¶ 68), is irrelevant because Klayman has not proffered any evidence indicating that Fitton previously stated otherwise.  Thus, Klayman's fraud claim will be dismissed.

2. **Klayman has not pled facts establishing he is entitled to relief pursuant to Rule 60.**

Even if Klayman had pled facts supporting his fraud allegations, Rule 60 does not provide an avenue for relief from *Judicial Watch I* in this court.

a. Motions pursuant to Fed. R. Civ. P. 60(b)

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party. . . from a final judgement, order or proceeding" on six bases.  Klayman relies on two of those bases: the fraud provision found in Rule 60(b)(3), and the "catchall provision" in Rule 60(b)(6), *see Gen. Med., P.C. v. Horizon/CMS Health Care Corp.*, 475 F. App'x 65, 75 (6th Cir. 2012), which allows relief for "any other reason that justifies relief."  Because the catchall provision "grants federal courts broad authority to relieve a party from a final judgment . . . provided that the motion is . . . not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)," the Supreme Court requires a showing of "extraordinary circumstances" to prevail.  *Salazar ex rel. Salazar v. D.C.*, 633 F.3d 1110, 1116 (D.C. Cir. 2011) (citing *Gonzalez v. Crosby,* 545 U.S. 524, 534 (2005)) (internal quotation marks omitted).

Klayman cannot obtain relief from the judgment under these provisions because they do not empower this court to provide the relief he seeks.  He properly moved for relief under Rule 60(b)(3) and (b)(6) before Judge Kollar-Kotelly in *Judicial Watch I*, and she denied the motions.

6-cv-670-CKK, ECF No. 606 at 23; ECF No. 607.[9]  He cannot now obtain review or reversal of her rulings by this court pursuant to subsection (b), because "[f]ederal district courts lack the power to void other federal courts' orders through a collateral attack."  *McNeil v. Harvey*, No. CV 17-1720 (RC), 2018 WL 4623571, at *5 (D.D.C. Sept. 26, 2018), *motion for relief from judgment denied*, No. CV 17-1720 (RC), 2019 WL 1003582 (D.D.C. Feb. 28, 2019) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995)); *see Lewis v. Green*, 629 F. Supp. 546, 553 (D.D.C. 1986) ("In essence, the plaintiff seeks a writ of mandamus to require Judge Green to vacate her earlier orders.  This Court, however, lacks authority to issue such orders, if such an order were appropriate.  A writ of mandamus may be issued only by a superior court, the court of appeals in this case."); *Jones v. U.S. Supreme Court*, 10-cv-910 (JDB), 2010 WL 2363678, at *1 (D.D.C. June 9, 2010), *aff'd Jones v. Supreme Court of U.S.*, 405 F. App'x 508 (D.C. Cir. 2010), *aff'd,* 563 U.S. 914 (2011) ("To the extent plaintiff seeks injunctive relief stemming from rulings [by another judge], he is in the wrong court.  This court is not a reviewing court and cannot compel . . . other Article III judges . . . to act.").

Klayman is well aware of this principle.  In *Klayman v. Kollar-Kotelly*, 892 F. Supp. 2d 261, 262 (D.D.C. 2012), he sued Judge Kollar-Kotelly, challenging her decisions in *Judicial Watch I*.  The district court dismissed the lawsuit, Klayman appealed, and the Court of Appeals affirmed the dismissal, explaining that "one district court does not have jurisdiction to review the decisions of another district court or federal appellate court."  *Klayman v. Kollar-Kotelly*, No. 12-5340, 2013 WL 2395909, at *1 (D.C. Cir. May 20, 2013) (citations omitted).

---

[9]  Klayman also sought relief under subsection (b)(2) which applies to "newly discovered evidence."  *Judicial Watch I*, 6-cv-670-CKK, ECF No. 606 at 22.  Further, as discussed below, he alleged fraud on the court.  *See id*. at 23.

Accordingly, Klayman's attempt to use Rule 60 subsection (b) to once again collaterally attack Judge Kollar-Kotelly's rulings and the judgment in *Judicial Watch I* fails.  To the extent he is entitled to relief, he must find refuge in subsection (d), discussed below, which allows an independent action to challenge an order or final judgment.[10]

> b.   Independent Actions Pursuant to Rule 60 subsection (d)

Fed. R. Civ. P. 60(d) provides that Rule 60 "does not limit a court's power to . . . entertain an independent action to relieve a party from a judgment, order, or proceeding" or "to set aside a judgment for fraud on the court."  Fed. R. Civ. P. 60(d)(1), (d)(3).[11]  A party "cannot use an independent action as a vehicle for the relitigation of issues," however.  *In re Salas*, No. 18-00260, 2020 WL 6054783, at *22 (Bankr. D.D.C. Oct. 13, 2020) (internal quotation marks omitted) (citing *Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1552 (11th Cir. 1985)).  Rather, "an independent action must meet a stringent and demanding standard," *In re Salas*, 2020 WL 6054783, at *22, because it "is a proceeding that sounds in equity and 'is available only to prevent a grave miscarriage of justice.'"  *Sieverding v. Am. Bar Ass'n*, 439 F. Supp. 2d 111, 114 n.1 (D.D.C. 2006) (citing *United States v. Beggerly*, 524 U.S. 38, 45, 47 (1998)).

---

[10]  "If an independent action for relief from a judgment is brought in the court that gave judgment, there is ancillary jurisdiction over the action despite the absence of a federal question or of diversity of citizenship or of the requisite amount in controversy."  11 Fed. Prac. & Proc. Civ. § 2868 (3d ed).

[11] In prior versions of the Federal Rules of Civil Procedure, Rule 60 did not contain a subsection (d); instead subsection (b) contained the independent action language.  The 2007 Amendment restyled Rule 60 and added subsection (d) but did not change the meaning.  *See* Fed. R. Civ. P. 60(b) advisory committee's note to 2007 amendment; *Hunt v. Nationstar Mortg., LLC*, 779 F. App'x 669, 671 (11th Cir. 2019) (observing that subsection (d) was formerly a part of subsection (b)).  Accordingly, some older cases cite to subsection (b) when discussing the independent action provision, now found in subsection (d).

Klayman has not met this standard because the issues he raises here are the same ones he raised before Judge Kollar-Kotelly in *Judicial Watch I*.  *See Judicial Watch I*, 6-cv-670-CKK, ECF No. 606 at 22–23; ECF No. 587 at 5.  Moreover, Klayman raised many of these same issues on appeal to the D.C. Circuit.  *See Klayman v. Judicial Watch, Inc.*, 19-7105 (D.C. Cir.), ECF No. 1844088 at 8.  Because he had adequate remedies at law, and indeed took advantage of them, Klayman is "procedurally barred" from bringing an independent action seeking relief from the judgment or orders in *Judicial Watch I*.  *See Duse v. IBM Corp.*, 212 F.R.D. 58, 62 (D. Conn. 2002), *aff'd sub nom. Duse v. Int'l Bus. Machs. Corp.*, 75 F. App'x 44 (2d Cir. 2003) (denying relief where plaintiff raised the issue of fraud in the original action); *Sieverding*, 439 F. Supp. 2d at 114 n.1 (D.D.C. 2006) (noting that an independent action may be brought only in the "the absence of any adequate remedy at law") (citing *Bankers Mortg. Co. v. United States*, 423 F.2d 73, 79 (5th Cir. 1970), *cert. denied*, 399 U.S. 927 (1970)); *Mitchell v. Rees*, 651 F.3d 593, 598 (6th Cir. 2011) (rejecting independent action where plaintiff failed to take advantage of "several opportunities . . . to remedy the error" on appeal).

"Equitable relief from a judgment will be granted to a party thereto only where adequate relief cannot be obtained by other proceedings."  *Neisloss v. Bush*, 293 F.2d 873, 880 n.16 (D.C. Cir. 1961) (citation omitted).  Typically, "the proper procedure when a judgment has been improperly obtained is to take further steps in the court rendering the judgment or to use some form of appellate procedure," both of which Klayman has done.  *Id.* at 880 n.16.  These procedures apply even where "the misconduct alleged is dishonesty by a member of a court."  *Id.* at 880 (citing *Root Ref. Co. v. Universal Oil Prods. Co.*, 169 F.2d 514 (3d Cir. 1948)).

Where such procedures are not available, a party may bring an independent action, as was the case in *Turner v. Pleasant*, 663 F.3d 770, 773 (5th Cir. 2011).  In *Turner*, a personal injury

13

case tried without a jury, plaintiffs claimed the trial judge was biased against them because of his relationship with defense counsel. *Id.* The Fifth Circuit initially upheld the lower court's denial of plaintiffs' Rule 60 motion due to a lack of factual support. *Id.* at 773–74. Years later, Congress impeached the trial judge after a Department of Justice investigation revealed that he was friends with the defense expert and was friends with the defense attorney who represented a company that had been secretly providing the judge with all expense-paid hunting trips, and had shared a hotel room with the judge while the personal injury case was on appeal. *Id*. at 774–76. Relying on the congressional impeachment report which included details from the Department of Justice investigation, as well as details about plaintiffs' personal injury case, plaintiffs filed an independent action seeking relief from the judgment. *Id*. at 774. The Court of Appeals permitted the action, reasoning that the complaint contained sufficient factual allegations that the defense attorney, witness and the judge had conspired to prevent the proper administration of justice. *Id*. at 777. Here, unlike the *Turner* plaintiffs, Klayman had an adequate remedy at law to prosecute his claims of fraud on the court.

Even in the absence of such a remedy, Klayman's fraud on the court claims would fail. "'Fraud upon the court' is a distinct subclass of the broader category of 'fraud.'" *Synanon Church v. United States*, 579 F. Supp. 967, 974 (D.D.C. 1984), *aff'd*, 820 F.2d 421 (D.C. Cir. 1987). Fraud upon the court is "directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *Baltia Air Lines, Inc. v. Transaction Mgmt., Inc.*, 98 F.3d 640, 642 (D.C. Cir. 1996) (citations omitted). "Neither perjury nor fabricated evidence constitutes fraud upon the court for purposes of [subsection (d)], as both can and should be exposed at trial." *Hunt v. Nationstar Mortg., LLC*, 779 F. App'x 669, 671 (11th Cir. 2019) (citations omitted). "Examples include the bribery of a judge or the knowing

participation of an attorney in the presentation of perjured testimony." *Baltia Air Lines, Inc.*, 98 F.3d at 643 (citation omitted). A party alleging fraud upon the court must present "clear and convincing evidence." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995) (citations omitted).

Klayman has not met this standard. As noted above, the record does not support his allegations of fraudulent testimony during *Judicial Watch I*. Similarly, his claims that Judge Kollar-Kotelly engaged in purported fraud and/or judicial misconduct are wholly devoid of any factual basis, and consist of unsupported allegations that she:

- "sanctioned and willfully furthered the fraud," (Am. Compl. ¶ 8);

- made "prejudicial remarks and [exhibited] biases" against Klayman, (Am. Comp. ¶ 48);

- exhibited "extrajudicial bias and prejudice," (Am. Compl. ¶ 61);

- sanctioned Klayman by refusing to allow him to use some exhibits, call witnesses or obtain certain discovery, (Am. Compl. ¶ 45);

- made "intentional legal errors," (Am. Comp. ¶ 48); and

- "has a conflict of interest since her actions and inactions resulted in the necessity of bringing this Complaint, and through these actions and inactions she has ratified, adopted and turned a blind eye toward and acquiesced in and furthered the fraud and other misconduct which give rise to the serious allegations set forth. . . ." (Am. Compl. ¶¶ 7, 83.)

These allegations against a sitting judge of this court do not meet the Rule 8 pleading requirements. While Klayman need not proffer "detailed" allegations, the Federal Rules of Civil Procedure "demand more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation'" with no factual support. *See McNair v. D.C.*, 213 F. Supp. 3d 81, 86 (D.D.C. 2016) (citing *Twombly*, 550 U.S. at 570). Likewise, Klayman's unsupported allegations do not present "clear and convincing evidence" of fraud upon the court. *See Bowie v. Maddox*, 677 F. Supp. 2d 276,

282 (D.D.C. 2010) (finding plaintiff failed to present clear and convincing evidence of fraud where he alleged the judgement and verdict were procured through a forged affidavit, but proffered only "bare allegations and hypotheses"); *Ramirez v. Dep't of Justice*, 680 F. Supp. 2d 208, 210 (D.D.C. 2010) (rejecting Rule 60 claims where plaintiff relied "only on conjecture and unsupported assertions" to support his allegations that the judge was biased and had colluded with defendants to present perjurious affidavits to the court); *see Jordan v. U.S. Dep't of Labor*, 331 F.R.D. 444, 451 (D.D.C. 2019), *aff'd sub nom. Jordan v. U.S. Dep't of Labor*, No. 19-5201, 2020 WL 283003 (D.C. Cir. Jan. 16, 2020), *cert. denied sub nom.*, *Jordan v. Dep't of Labor*, No. 20-241, 2020 WL 6121685 (U.S. Oct. 19, 2020) (rejecting fraud on the court claims where plaintiff's allegations of judicial impropriety and opposing counsel misconduct were "based on words taken out of context from" defendant's "briefs, declarations, and th[e] Court's prior opinions," but were not backed by factual allegations of fraud).  Klayman cannot bring an independent action based on "fraud on the court simply because he disagrees with" Judge Kollar-Kotelly's rulings.  *See Jordan*, 331 F.R.D. at 452.

3. **Klayman improperly named Judge Kollar-Kotelly as a Defendant**

Even if Klayman was entitled to bring an independent action pursuant to Rule 60(d), he still could not bring such an action against Judge Kollar-Kotelly.  While he seeks monetary relief from the JW Defendants, Klayman makes clear he does not seek such relief from Judge Kollar-Kotelly.  Instead, he asks this court to set aside or "order" Judge Kollar-Kotelly to set aside the judgment in *Judicial Watch I*.  (Am. Compl. ¶¶ 88, 98, 110.).  As previously discussed, Klayman is or ought to be aware this court has no power to "order" Judge Kollar-Kotelly to do any such thing.

More importantly, Judge Kollar-Kotelly is "immune from liability for her role" as the presiding judge in *Judicial Watch I*.  *See Lewis v. Green*, 629 F. Supp. 546, 552–53 (D.D.C.

1986) (discussing judicial immunity where plaintiffs filed suit in federal district court against a federal judge and sought reversal of her prior decisions).  The fact that Klayman does not seek damages from Judge Kollar-Kotelly does not alter this analysis.  "It is well established that judges are immune from damages for actions undertaken within their jurisdiction.  The policies underlying judicial immunity from damages dictate that immunity be conferred in suits, such as this," where a party essentially "seeks an injunction compelling a judge to alter an earlier decision."  *Id.*; *see Jenkins v. Kerry*, 928 F. Supp. 2d 122, 134–35 (D.D.C. 2013) (rejecting argument that, in the absence of a damages claim, plaintiff could proceed with lawsuit against judges over their judicial rulings).

Moreover, "[u]nder the doctrine of judicial immunity, a judge will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of h[er] authority."  *Thomas v. Wilkins*, 61 F. Supp. 3d 13, 18–19 (D.D.C. 2014), *aff'd,* No. 14-5197, 2015 WL 1606933 (D.C. Cir. Feb. 23, 2015) (internal quotation marks and alterations omitted) (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)) (dismissing claims against federal district court judge who allegedly "sabotaged the entire case by falsifying documents, destroying documents, and infiltrating the administrative office of the clerk to perpetuate his malicious endeavors") (internal quotation marks omitted).  Litigants who allege judicial impropriety have other options for obtaining relief, and the legal system does not put judges in a position where they "have to fear that unsatisfied litigants may hound [them] with litigation charging malice or corruption." *Lewis*, 629 F. Supp. at 553 (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

Finally, Klayman's assertion that Judge Kollar-Kotelly is a necessary party to this litigation pursuant to Federal Rule of Civil Procedure 19, (Am. Compl. ¶ 8) "does not pass the

straight-face test." *Kisela v. Hughes*, 138 S. Ct. 1148, 1154 (2018) (internal quotation marks and citations omitted).  Rule 19(a)(1)(A) provides that a person "must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties."  Even if she were not immune to suit, Judge Kollar-Kotelly's presence as a defendant would not be necessary for this court to fashion equitable relief.  Indeed, before he added Judge Kollar-Kotelly as a defendant, Klayman simply asked this court to set aside or vacate her rulings.  (*See* Compl. ¶¶ 87, 97, 109.)  After adding Judge Kollar-Kotelly as a defendant, he included an alternative demand for this court to "order" her to set aside the judgment in *Judicial Watch I*, (Am. Compl. ¶¶ 88, 98, 110), despite being well aware that this court is not empowered to do so.

The fact that Klayman named Judge Kollar-Kotelly as a defendant in this action immediately after this case was reassigned to her raises the specter of judge shopping by attempting to circumvent this court's local case assignment rules.  Indeed, Klayman asserts that "this Amended Complaint should not be and cannot be assigned as related to this District Court Judge, Defendant Kotelly, who presided over the underlying judgment," ostensibly because of her alleged bias.  (Am. Compl. ¶ 7.)  This blatant attempt to manipulate the court's local rules arguably constitutes a violation the D.C. Bar's Rules of Professional Conduct.  *See* D.C. R. Prof. Conduct 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification, or reversal of existing law.").  Manipulation of the court's rules, involving unsupported accusations against a respected judge of this court, cannot be sanctioned.

**D. CONCLUSION**

      For the reasons set forth above, by separate order, this court will dismiss this action.


Date:  February 16, 2021


                               *Tanya S. Chutkan*
                               TANYA S. CHUTKAN
                               United States District Judge